1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9               FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   AUGUSTUS MONDRIAN, et al.,                No.  1:19-cv-00884-DAD-SKO

12              Plaintiff,

13        v.                                   ORDER DIRECTING THE FILING OF
                                               SUPPLEMENTAL BRIEFING
14   TRIUS TRUCKING, INC.,
                                               (Doc. No. 18)
15              Defendant.

16

17          This matter is before the court on plaintiffs' motion for preliminary approval of a class

18   action settlement and conditional certification of a settlement class filed on November 13, 2020.[1]

19   (Doc. No. 18.)

20          In conducting its review of the pending motion, the undersigned has identified numerous

21   potential deficiencies with the parties' settlement agreement and the pending motion, thereby

22

23   [1] The undersigned apologizes for the excessive delay in the issuance of this order.  This court's
     overwhelming caseload has been well publicized and the long-standing lack of judicial resources
24   in this district long-ago reached crisis proportion.  That situation has now been partially addressed
     by the U.S. Senate's confirmation of a new district judge for this court on December 17, 2021.
25   Nonetheless, for over twenty-two months the undersigned was left presiding over approximately
     1,300 civil cases and criminal matters involving 735 defendants.  Unfortunately, that situation
26   sometimes results in the court not being able to issue orders in submitted civil matters within an
     acceptable period of time and that remains the case as the undersigned works through the
27   predictable resulting backlog.  This has been frustrating to the court, which fully realizes how
     incredibly frustrating it is to the parties and their counsel.
28
                                               1

1  necessitating this order requiring the parties to provide the court with supplemental briefing.  The
2  court briefly summarizes the relevant facts below.

3        On May 10, 2016, plaintiff Mondrian, on behalf of himself and all others similarly
4  situated, commenced this wage-and-hour class action against defendant Trius Trucking, Inc. in
5  the Fresno County Superior Court.  (Doc. No. 1-1 at 2.)  On January 5, 2017, plaintiff Mondrian,
6  joined by plaintiff Jones, filed a first amended complaint in that court.  (Doc. No. 1-2 at 45.)  On
7  March 27, 2017, plaintiffs filed a second amended complaint, and on May 29, 2019, plaintiffs
8  filed a third amended complaint in state court.  (Doc. Nos. 1-3 at 45; 1-5 at 4.)  Plaintiffs' third
9  amended complaint asserts wage, hour, and other labor-related claims in violation of the
10 California Labor Code, California Business and Professions Code, and federal Fair Labor
11 Standards Act ("FLSA"), which plaintiffs claim give rise to penalties under California's Private
12 Attorney's General Act ("PAGA").  (Doc. No. 1-5 at 4.)

13       On June 27, 2019, defendant filed a notice of removal in this court on the basis of federal
14 question jurisdiction pursuant to 28 U.S.C. § 1331 as to plaintiffs' FLSA claim and supplemental
15 jurisdiction pursuant to 28 U.S.C. § 1367(a) as to plaintiffs' state law claims.  (Doc. No. 1 at 4.)

16       On November 13, 2020, plaintiffs filed the pending motion for conditional certification
17 and preliminary approval of the class action settlement, which does not explicitly seek conditional
18 certification and preliminary approval of the collective action settlement.  (Doc. No. 27.)

19       Accordingly, as detailed below, the undersigned will order the parties to provide
20 supplemental briefing addressing the court's concerns as identified below.

21       Despite plaintiffs' FLSA claim being the sole basis for federal jurisdiction over this
22 action, and despite plaintiffs referring to and asserting claims on behalf of a separate putative
23 FLSA collective, the pending motion does not seek to certify the putative FLSA collective.  (*See*
24 Doc. No. 18-1 at 9–10.)  Indeed, in the pending motion, plaintiffs address only the Rule 23 class
25 certification and preliminary approval of class action standards; they do not address the standards
26 for the certification of an FLSA collective at all, let alone provide any analysis as to whether
27 /////
28 /////

2

1  those standards are met here.[2]  *See Campbell v. City of Los Angeles*, 903 F.3d 1090, 1101 (9th

2  Cir. 2018) ("Collective actions and class actions are creatures of distinct texts—collective actions

3  of section 216(b), and class actions of Rule 23—that impose distinct requirements."); *id.* at 1109

4  ("Preliminary certification [of an FLSA collective] refers to the dissemination of notice to

5  putative collective members, conditioned on a preliminary determination that the collective as

6  defined in the complaint satisfies the "similarly situated" requirement of section 216(b)."); *see*

7  *also Millan v. Cascade Water Servs., Inc.*, 310 F.R.D. 593, 601 (E.D. Cal. 2015).

8      Also of concern to the court, although the parties' proposed settlement agreement requires

9  FLSA members to affirmatively opt-in to the FLSA portion of the settlement, the settlement

10  agreement itself does not differentiate between released class claims and released FLSA claims.

11  (Doc. No. 18-2 at 24.)  Indeed, the settlement agreement provides that upon the effective date of

12  the settlement, "each and every Participating Class Member" will "release[], discharge[], and

13  agree[] to hold harmless Defendant . . . from any and all" of the released claims, which include

14  "claims [that] arise under federal, state and/or local law . . . during the Class Period."  (*Id.* at 22,

15  49.)  According to the instructions to class members set forth in the proposed class notice, "[i]f

16  you do nothing, you will be a Participating Class Member, a settlement check will automatically

17  be mailed to you, and you will release all claims you may have related to the allegations in the

18  case." (*Id.* at 59.)  Therefore, on the face of the settlement agreement and proposed class notice,

19  even class members who do not opt-in to the FLSA portion of the settlement would apparently

20  release defendant from liability as to all FLSA claims.

21      Accordingly, the parties are directed to file supplemental briefing addressing the

22  following issues:

23      1.    On what basis can the court conclude that the parties' settlement agreement is fair,

24            reasonable, and adequate, when it includes (i) a broad release of FLSA claims,

25            even as to class members who do not opt-in to the FLSA portion of the settlement,

26  _____

27  [2]  Although plaintiffs reference that federal district courts have granted preliminary approval of
class actions involving similar FLSA payment structures, they advance no arguments regarding
whether the standards for certification of an FLSA collective are met in this case.  (*See* Doc. No.

28  18-1 at 7–8, 9–10.)

and (ii) there is no showing that the settlement agreement satisfies the requirements to resolve an FLSA claim by way of settlement?[3]

2.   On what basis can the court conclude that the proposed class notice and the proposed FLSA consent form satisfy the notice requirements of FLSA collective action settlements?  Indeed, the class notice does not even mention the FLSA other than stating that "FLSA Opt-In Members shall receive an increase of 10% as to their work weeks in the calculation" of their settlement amounts.  (Doc. No. 18-2 at 59.)

3.   The court is also concerned that the proposed class notice may not sufficiently inform putative class members as to the claims that are being released under the proposed settlement agreement.[4]  For example, the proposed class notice refers putative class members to section XXI.B of the settlement agreement to review the "full release language" under the settlement, but the settlement agreement does not even include a section XXI.B.  (Doc. No. 18-2 at 59.)   The parties are directed to file a proposed amended notice that refers class members to the correct location within the settlement agreement where the release provision can be found.  In addition, the parties are directed to carefully review their submissions for similar errors, of which the above is only one example.

4.   The settlement agreement specifies that class members who worked for defendant as truck drivers in California during the time period from May 10, 2015 to December 31, 2016 constitute "Aggrieved Employees."  (*Id.* at 22.)  The settlement agreement (but notably, not the proposed class notice) further provides that the Aggrieved Employees "do[] not have the option of excluding themselves for [sic] this Settlement as it relates to his or her PAGA claims, and will be bound

---

[3]  *See Murillo v. Pac. Gas & Elec. Co.*, 266 F.R.D. 468, 470 (E.D. Cal. 2010) ("The FLSA limits participation in a collective action to only those parties that 'opt-in' to the suit.").

[4]  *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1025 (9th Cir. 1988) ("Adequate notice is critical to court approval of a class settlement under Rule 23(e)"), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011)).

by the portions of this Settlement relating to the settlement and release of those claims." (*Id.* at 38.) On what basis can the court conclude that this provision—which prohibits a certain subset of class members from excluding themselves entirely from this class action settlement—is fair, reasonable, and adequate? Relatedly, on what basis can the court conclude that the proposed class notice provides adequate notice to putative class members as to the claims that are released under the settlement agreement by omitting this information?

5. Pursuant to the settlement agreement, each participating class member must cash their settlement check within 180 days of the check's date of issuance. (*Id.* at 47.) The settlement agreement provides that the settlement administrator will use "appropriate skip tracing for undeliverable Notice Materials," but it does not specify the procedures through which the settlement administrator will re-mail undeliverable materials or whether such class members will have additional time to deposit their settlement checks. (*Id.* at 38.) The parties are directed to explain what procedures and timeframes will apply to class members for whom the settlement administrator re-mailed notice materials.

6. Under the proposed settlement agreement, class members who do not wish to participate in the settlement must *opt-out* within forty-five days of the settlement administrator mailing out notices. (*Id.* at 46.) However, the settlement agreement does not provide a timeframe for when participating FLSA members must *opt-in* to the FLSA portion of the settlement. (*See id.* at 79.) The parties are directed to so specify.

7. Pursuant to the settlement agreement, defendant has the right to rescind and void the settlement in the event that five percent or more of the class members opt out of the settlement. (*Id.* at 40.) The parties are directed to provide authority for why this "right to rescind" provision—and specifically, the five percent threshold—in the settlement is reasonable, fair, and adequate under Rule 23.

/////

5

8.    Next, the court is concerned that the parties did not comply with the PAGA's requirement that a proposed settlement be submitted to the California Labor and Workforce Development Agency ("LWDA").  Cal. Lab. Code at § 2699(l)(2); *see also Haralson v. U.S. Aviation Servs. Corp.*, 383 F. Supp. 3d 959, 971 (N.D. Cal. 2019) (noting that a proposed settlement should be submitted to the LWDA to allow it to comment if it so desires (citing *Ramirez v. Benito Valley Farms, LLC*, No. 16-cv-04708-LHK, 2017 WL 3670794, at *2 (N.D. Cal. Aug. 25, 2017))).

9.    Following the creation of the proposed settlement agreement, the parties jointly stipulated to amend various sections of that settlement agreement.  (*See* Doc. No. 18-2 at 81–86.)  In support of their pending motion for preliminary approval of the class action settlement, plaintiffs filed with the court both the original settlement agreement and the parties' joint stipulation listing amendments to the original settlement agreement.  (Doc. No. 18-2 at 19–56, 81–86.)   The proposed class notice states that the settlement agreement will be accessible to class members on class counsel's website.  (*Id.* at 59.)  The court is concerned that maintaining multiple documents consisting of the original settlement agreement and subsequent piecemeal modifications to the settlement will be unnecessarily confusing for class members who seek to read and review the settlement agreement.  For instance, when reading the original settlement agreement, there is no indication that certain portions of it have since been amended and are no longer operative.  The parties are directed to submit one amended settlement agreement to the court and clarify that only a single, finalized version of the settlement agreement will be published on class counsel's website for class members to view.

10.    Finally, the court is concerned by the mathematical feasibility of the parties' proposed compensation to participating FLSA members for the release of FLSA claims.  Pursuant to the settlement agreement,

> [a] Participating Class Member's Settlement Share will be calculated as follows:  (1) calculating the total weeks worked by all Participating Class Members based on the

Class Data (the "Total Work Weeks"); (2) dividing each Participating Class Member's work weeks based on the Class Data by the Total Work Weeks to determine his or her proportionate share of the Net [Settlement Fund] (for each Participating Class Member, the "Settlement Share Proportion"); and (3) multiplying each Participating Class Member's Settlement Share Proportion by the Net [Settlement Fund].   In addition, those Participating Class Members who are FLSA Opt-In Members shall receive an increase of 10% as to their work weeks in the calculation of their Settlement Share Proportion.

(*Id.* at 45–46.)  In their motion for preliminary approval, plaintiffs cite three cases in which they assert that "[t]his same 10% additional compensation for an FLSA opt-in has been expressly approved."  (Doc. No. 18-1 at 9–10.)  However, in two of these cases, this compensation structure, which involves a ten percent increase *to individual class members' number of work weeks*, was not employed.  *See Thompson v. Costco Wholesale Corp.*, No 3:14-cv-02778-CAB-WVG, 2017 WL 1957552, at *7–8 (granting preliminary approval of a class and collective action settlement in which ten percent of the net settlement fund was allocated as a "net FLSA collective settlement fund"); *Gutierrez-Bejar v. SOS Int'l, LLC*, No. 2:16-cv-09000, 2019 WL 5683901, at *4, *12 (granting final approval of a class and collective action settlement in which ten percent of the net settlement fund was allocated to the FLSA class and each FLSA class member would receive a "Federal Law Award" of an equal amount).  Indeed, while the calculations in this case would depend on specific numbers which the parties have not furnished to the court, plaintiffs' proposed work-week-based calculation method may lead to defendant owing more to participating class and FLSA members than the amount contained in the net settlement fund.  In theory, if enough class members opted-in to the FLSA portion of the settlement, the ten percent increase in their respective weeks worked could ultimately amount to more in settlement payouts than is

/////

/////

/////

7

contained in the net settlement fund.[5]  Thus, parties are directed to either: (a)

revise the settlement agreement so that it uses the compensation structure

employed in *Thompson* and *Gutierrez-Bejar*, whereby ten percent of the net

settlement funds were allocated to the participating FLSA members, or (b) clarify

that they intend to rely on the proposed compensation structure involving a ten

percent increase to the weeks worked calculation for FLSA opt-in members.  To

the extent that the parties intend to rely on the compensation structure involving a

ten percent increase to the weeks worked calculation for FLSA members who opt-

---

[5]  To illustrate, defendant's settlement obligation, or $S_O$, under this compensation structure can be summarized as follows:

$$S_O = \sum_{i}^{n} \left(\frac{1.1 x_i}{w}\right)(S) + \sum_{i}^{m} \left(\frac{y_i}{w}\right)(S)$$

where $n$ = the number of class members who opt into the FLSA portion of the settlement,
$m$ = the number of the class members who do not opt into the FLSA portion of the settlement,
$w$ = the total work weeks,
$x_i$ = participating FLSA member's work weeks,
$y_i$ = participating class-only member's work weeks, and
$S$ = the amount of funds in the net settlement fund.

By way of example, if all class members opt-in to the FLSA portion of the settlement (i.e., if $m$ = 0), this equation can be simplified as follows:

$$S_O = \sum_{i}^{n} \left(\frac{1.1 x_i}{w}\right)(S)$$

If all class members opt into the FLSA portion of the settlement, then the sum of all participating FLSA members work weeks is equal to the total work weeks, $\sum_{i}^{n} x_i = w$, and thus:

$$S_O = \left(\frac{1.1w}{w}\right)(S),$$

$$S_O = 1.1S,$$

and consequently,

$$S_O > S,$$

such that in this scenario, defendant's payment obligations to the class members would exceed the amount of funds in the net settlement fund.  Of course, whether defendant's payment obligations would indeed exceed the amount in the net settlement fund would depend on how many total work weeks there are, the number of participating class members, and the number of participating FLSA members.

in to the settlement (i.e., option (b)), the parties are directed to provide specific information and authority demonstrating that the proposed FLSA compensation structure is not only numerically feasible, but also meets the requisite legal standards in connection with class and collective action settlements.

Accordingly, the parties shall file a supplemental brief or declarations addressing these issues within twenty-eight (28) days from the date of service of this order and are directed to attach to their supplemental briefing or declarations as exhibits any proposed amended settlement agreement and/or class notice.

The parties to this action may, in light of the numerous concerns identified by the court above, be better served to revisit and modify their proposed settlement. This would necessitate the amendment of (or withdrawing and refiling of) the motion for preliminary approval of a class action settlement and conditional certification of a settlement class. If plaintiffs wish to amend their motion for preliminary approval of a class action settlement and conditional class certification, or to withdraw the pending motion subject to refiling, the court hereby grants plaintiffs leave to do so. Any amended motion plaintiffs may elect to file shall be filed with this court no later than within twenty-eight (28) days of service of this order.

IT IS SO ORDERED.

Dated:   **March 10, 2022**                              _____

                                                         UNITED STATES DISTRICT JUDGE

9