1
2
3
4
5
6
7

8                    UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   AUGUSTUS MONDRIAN, et al.,              No. 1:19-cv-00884-ADA-SKO

12              Plaintiffs,                  ORDER GRANTING MOTIONS FOR FINAL
                                             APPROVAL OF CLASS AND COLLECTIVE
13        v.                                 ACTION SETTLEMENT AND GRANTING
                                             MOTION FOR ATTORNEYS' FEES, COSTS,
14   TRIUS TRUCKING, INC.,                   AND INCENTIVE AWARD

15              Defendant.                   (ECF Nos. 33, 34)

16

17        This matter came before the Court on October 3, 2022, for a hearing on Plaintiffs'

18   unopposed motions for final approval of a class action settlement and for an award of attorneys'

19   fees, costs, and incentive awards for Plaintiffs. (ECF Nos. 33, 34.)[1] Attorney Kyle Nodrehaug

20   appeared by video on behalf of Plaintiffs and the putative class. Attorney Irene Fitzgerald

21   appeared by video on behalf of Defendant Trius Trucking, Inc. ("Defendant"). For the reasons

22   set forth below, the Court will grant final approval of the class action settlement and will grant the

23   motion for the attorneys' fees, costs, and incentive awards to Plaintiffs.

24   ///

25   ///

26   ///

27

28   _____
     [1] All references to ECF page numbers refer to the page number at the top of each document.

                                    1

1    I.    **BACKGROUND**

2         The Court previously summarized Plaintiffs' allegations in its June 27, 2022, order

3    granting Plaintiffs' motion for preliminary approval of a class action settlement and conditional

4    class certification.  (ECF No. 31.)  As such, the Court will not repeat the factual background in

5    this order.  Following the grant of preliminary approval in this action, on August 26, 2022,

6    Plaintiffs filed the pending unopposed motion for attorneys' fees, costs, and an incentive award

7    for Plaintiffs, and on September 2, 2022, Plaintiffs filed the pending unopposed motion for final

8    approval of the parties' class action settlement.  (ECF Nos. 33, 34.)  In support of their pending

9    motions, Plaintiffs have submitted declarations from Plaintiffs, class counsel, and the settlement

10   administrator in this action.  (ECF Nos. 33-2, 34-2, 38.)  As of the date of the hearing on October

11   3, 2022, no objections to the settlement were received nor filed with this Court, and no class

12   members have opted out of the settlement.

13        The settlement agreement provides for Defendant to pay a total of $995,000.  (ECF No. 31

14   at 5.)  Assuming the parties' proposed allocations are awarded in full, approximately $688,750

15   will be available for distribution to participating class and FLSA members.  (*Id.* at 5-6.)

16   II.   **FINAL CERTIFICATION OF SETTLEMENT CLASS AND COLLECTIVE**

17        The Court conducted an examination of the class action factors in the order granting

18   preliminary approval of the settlement and found the factors warranted certification.  (*Id.* at 20.)

19        To determine the adequacy of representation requirement, the Court directed Plaintiffs'

20   counsel to determine whether they have any conflicts of interest with Plaintiffs or any of the class

21   members.  (*See* ECF Nos. 18-1 at 29, 31 at 18.)  In the motion for final approval, Plaintiffs'

22   counsel confirmed that they do not have any conflicts.  (ECF No. 33 at 9.)

23        As there were no additional substantive issues concerning the class certification raised, the

24   Court will not repeat its prior analysis here and finds that final class and collective action

25   certification in this case is appropriate.

26        A.    **The Rule 23 Class**

27        The Court certifies the following as the Class Members: "all individuals who worked for

28   Defendant, Trius Trucking in California as Truck Drivers at any location in California during the

2

1   time period May 10, 2012, to December 31, 2016." (ECF No. 31 at 3.)  In addition, for the

2   reasons stated in the order granting preliminary approval, Plaintiffs Augustus Mondrian and

3   Rhonda Jones are confirmed as class representatives; Blumenthal Nordrehaug Bhowmik de

4   Blouw LLP are confirmed as class counsel; and ILYM Group ("ILYM") is confirmed as the

5   settlement administrator.  (*Id.* at 38.)

6           **B.      The FLSA Collective**

7           The Court certifies the following as the FLSA Collective: "all individuals who worked for

8   defendant Trius Trucking in California as truck drivers at any location in California during the

9   period of May 10, 2013, to December 31, 2016." (*Id.* at 3.)

10  **III.    FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

11          Class actions require the district court's approval prior to settlement.  Fed R. Civ. P 23(e).

12  To approve a settlement, a district court must: (i) ensure notice is sent to all class members; (ii)

13  hold a hearing and make a finding that the settlement is fair, reasonable, and adequate; (iii)

14  confirm that the parties seeking approval file a statement identifying the settlement agreement;

15  and (iv) be shown that class members were given an opportunity to object.  Fed. R. Civ. P.

16  23(e)(1)-(5).  The parties filed the amended settlement agreement on June 23, 2022, (ECF No.

17  30), and Class Members were given an opportunity to object on or before September 12, 2022.

18  (ECF No. 38 at 11.)  The Court did not receive any objections, timely or otherwise, to the

19  amended settlement agreement.  (ECF No. 38 at 4.)  The Court now turns to the adequacy of

20  notice and its review of the settlement following the final fairness hearing.

21          **A.      Notice**

22          Adequate notice of the class settlement must be provided under Rule 23(e).  *Hanlon v.*

23  *Chrysler Corp.*, 150 F.3d 1011, 1025 (9th Cir. 1998); *see also Silber v. Mabon*, 18 F.3d 1449,

24  1453-54 (9th Cir. 1994) (noting that the court need not ensure all class members receive actual

25  notice, only that "best practicable notice" is given); *Winans v. Emeritus Corp.*, No. 4:13-cv-

26  03962-HSG, 2016 WL 107574, at *3 (N.D. Cal. Jan. 11, 2016) ("While Rule 23 requires that

27  'reasonable effort' be made to reach all class members, it does not require that each individual

28  actually receive notice.").  "Notice is satisfactory if it 'generally describes the terms of the

3

1   settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come

2   forward and be heard.'"  *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)

3   (quoting *Mendoza v. Tucson Sch. Dist. No. 1*, 623 F.2d 1338, 1352 (9th Cir. 1980)).  Any notice

4   of the settlement sent to the class should alert class members of "the opportunity to opt-out and

5   individually pursue any state law remedies that might provide a better opportunity for recovery."

6   *Hanlon*, 150 F.3d at 1025.

7        The Court previously reviewed the notice provided in this case at the preliminary approval

8   stage and found it to be satisfactory.  (ECF No. 31 at 35.)  Class counsel filed the declaration of

9   Madely Nava of ILYM in support of the motion for final approval.  (ECF No. 38.)  Following the

10   grant of preliminary approval, on July 7, 2022, ILYM received the class data file from

11   Defendant's counsel, which contained the name, social security number, last known mailing

12   address, and the total number of applicable workweeks for each Class Member.  (*Id.* at 3.)  ILYM

13   uploaded the data file to its database and checked for duplicates and other possible discrepancies.

14   (*Id.*)  ILYM finalized a class list of 495 individuals.  (*Id.*)  In preparation for mailing, all 495

15   names and addresses in the class list were processed against the National Change of Address

16   ("NCOA") database, maintained by the United States Postal Service ("USPS"), for purposes of

17   updating and confirming the mailing addresses of the Class Members before mailing the notice

18   packets.  (*Id.*)  The NCOA contains requested changes of addresses filed with the USPS.  (*Id.*)

19        On July 29, 2022, ILYM mailed the notice packets via U.S. First Class Mail to the 495

20   individuals contained in the class list.  (*Id.*)  A copy of the notice packet was attached to the

21   declaration of Madely Nava as an exhibit.  (*See id.* at 12.)  The notice packet describes the claims

22   involved, what the settlement provides, what Class Members are giving up in exchange for the

23   settlement payment, each Class Member's estimated payment from the settlement, and how the

24   Class Member will receive the payment.  (*See* ECF No. 38 at 8-13.)  As of September 20, 2022,

25   102 notice packets have been returned to ILYM as undeliverable, and no packet included a

26   forwarding address.  (*Id.*)  Accordingly, ILYM performed a computerized skip trace on the 102

27   returned notice packets to obtain an updated address for the purpose of re-mailing the notice

28   packet.  (*Id.*)  The skip trace resulted in 75 updated addresses, and notice packets were promptly

4

re-mailed to those 75 class members, via U.S. First Class Mail.  (*Id.* at 4.)  As of September 20, 2022, a total of 27 notice packets have been deemed undeliverable and no updated address was found from the skip tracing.  (*Id.*)

To opt out, the notice provides that each Class Member "submit a written request to the Settlement Administrator that states 'I do not want to be part of the settlement class in the *Mondrian v. Trius Trucking* class action.'"  (*Id.* at 11.)  The notice further provides, "[t]his Election Not to Participate in Settlement must be signed, state the Class Member's name and address, and be postmarked no later than September 12, 2022."  (*Id.*)  As for objections, the notice provides that if a Class Member believes that the settlement should not be approved by the Court for any reason, they may file objections in writing and "describe why the objector believes the settlement is unfair and whether the objector intends to appear at the final approval hearing."  (*Id.*)  "The objections must be submitted to the Court and mailed or delivered to Class Counsel and counsel for Defendant at the below addresses on or before September 12, 2022."  (*Id.*)  As for the FLSA settlement, the notice provides that if the Class Member does not return the FLSA consent form on or before September 12, 2022, the Class Member will not receive the additional payment of the FLSA share.  (*Id.* at 13.)

As of September 20, 2022, ILYM has not received any requests for exclusions or any objections to the settlement.  (*Id.* at 4.)  Therefore, all 495 class members are participating in the settlement.  As of September 20, 2022, ILYM reports a total of 36 FLSA opt-in members.  (*Id.*)

Given the above, the Court accepts the reports of the settlement administrator and finds that ILYM provided adequate notice, thereby satisfying Federal Rule of Civil Procedure 23(e)(1).  *Silber*, 18 F.3d at 1453-54; *Winans*, 2016 WL 107574, at *3.

**B.    Final Fairness Determination**

On October 3, 2022, the Court held a final fairness hearing, at which class counsel and defense counsel appeared by video in Courtroom 1.  At the final approval stage, the primary inquiry is whether the proposed settlement "is fundamentally fair, adequate, and reasonable."  Fed. R. Civ. P. 23(e)(2); *Lane v. Facebook, Inc.*, 696 F.3d 811, 818 (9th Cir. 2012); *Hanlon*, 150 F.3d at 1026.  "It is the settlement taken as a whole, rather than the individual component parts,

that must be examined for overall fairness." *Hanlon*, 150 F.3d at 1026 (citing *Officers for Justice v. Civil Serv. Comm'n of S.F.*, 688 F.2d 615, 628 (9th Cir. 1982)); *see also Lane*, 696 F.3d at 818-18.  Having already completed a preliminary examination of the agreement, the Court reviews it again, mindful that the law favors the compromise and settlement of class action suits.  *See, e.g.*, *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008); *Churchill Vill., L.L.C.*, 361 F.3d at 576; *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *Officers for Justice*, 688 F.2d at 625.  Ultimately, "the decision to approve or reject a settlement is committed to the sound discretion of the trial judge because he [or she] is exposed to the litigants and their strategies, positions, and proof."  *Staton*, 327 F.3d at 953 (quoting *Hanlon*, 150 F.3d at 1026).

In assessing the fairness of a class action settlement, courts balance the following factors:

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*Churchill Vill., L.L.C.*, 361 F.3d at 575; *see also In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 944 (9th Cir. 2015); *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 964-67 (9th Cir. 2009).  These settlement factors are non-exclusive, and each need not be discussed if they are irrelevant to a particular case.  *Churchill Vill., L.L.C.*, 361 F.3d at 576 n.7.

However, consideration of the *Churchill* factors alone is not sufficient to survive appellate review.  *See Briseño v. Henderson*, 998 F.3d 1014, 1022-26 (9th Cir. 2021) (holding that the revised Rule 23(e) requires district courts "to go beyond our precedent" and mandates consideration of "the *Bluetooth* factors" to all class action settlements, regardless of whether settlement was achieved before or after class certification); *see also* Fed. R. Civ. P. 23(e)(2)(C)-(D).  Under the revised Rule 23(e), "district courts must apply the *Bluetooth* factors to scrutinize fee arrangements . . . to determine if collusion may have led to class members being shortchanged."  *Briseño*, 998 F.3d at 1026.  The so-called *Bluetooth* factors—also referred to as "subtle signs" of collusion—include: (i) "when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply

rewarded;" (ii) the existence of a "clear sailing" arrangement, which provides "for the payment of attorneys' fees separate and apart from class funds," or a provision under which defendant agrees not to object to the attorneys' fees sought; and (iii) "when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011) (internal quotations and citations omitted). "The presence of these three signs is not a death knell—but when they exist, 'they require[] the district court to examine them, . . . develop the record to support its final approval decision,' and thereby 'assure itself that the fees awarded in the agreement were not unreasonably high.'" *Kim v. Allison*, 8 F.4th 1170, 1180 (9th Cir. 2021) (quoting *Allen v. Bedolla*, 787 F.3d 1218, 1224 (9th Cir. 2015)). Thus, while this Court has wide latitude to determine whether a settlement is substantively fair, it is held to a higher procedural standard, and in order "[t]o survive appellate review . . . [it] must show it has explored comprehensively all factors and must give a reasoned response to all non-frivolous objections." *McKinney-Drobnis v. Oreshack*, 16 F.4th 594, 606 (9th Cir. 2021) (quoting *Allen*, 787 F.3d at 1223-24).

### 1. Strength of Plaintiffs' Case

When assessing the strength of a plaintiff's case, the court does not reach "any ultimate conclusions regarding the contested issues of fact and law that underlie the merits of th[e] litigation." *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 720 F. Supp. 1379, 1388 (D. Ariz. 1989). The court cannot reach such a conclusion because evidence has not been fully presented. *Id.* Instead, the court "evaluate[s] objectively the strengths and weaknesses inherent in the litigation and the impact of those considerations on the parties' decisions to reach these agreements." *Id.*

As described in the motion for preliminary approval of the class settlement, Defendant denies all allegations of wrongdoing and alleges numerous affirmative defenses relating not only to Plaintiffs' claims, but also to class certification. (ECF No. 18-1 at 21.) Defendant asserts facts that could negate essential elements of Plaintiffs' claims. (*Id.*) In addition, Plaintiffs' counsel concedes that "there could be significant problems of proof regarding the extent to which the members of the Class missed breaks relating to their employ with Defendant." (*Id.*) For

1  example, Defendant contends that its truck drivers were able to take meal and rest breaks because

2  they controlled their own schedule.  (*Id.*)  Furthermore, as described in the Court's order granting

3  preliminary approval of the proposed settlement, although Plaintiffs believe that it would have

4  been possible to prevail at trial, Defendant's defenses "presented serious threats" to Plaintiffs'

5  claims that "could eliminate or substantially reduce any recovery of the Class."  (*Id.* at 18; ECF

6  No. 31 at 25.)

7        Accordingly, the Court finds that consideration of this factor weighs in favor of granting

8  final approval of the parties' settlement in this action.

9                  2.    <u>Risk, Expense, Complexity, and Likely Duration of Further Litigation, and</u>

10                      <u>Risk of Maintaining Class Action Status Throughout Trial</u>

11        *Churchill* factors two and three, the risk, expense, complexity, and likely duration of

12  further litigation, and the risk of maintaining class action status throughout trial, weigh in favor of

13  approval.  *See* Fed. R. Civ. P. 23(e)(2)(C)(i).  "[T]here is a strong judicial policy that favors

14  settlements, particularly where complex class action litigation is concerned."  *In re Syncor ERISA*

15  *Litig.*, 516 F.3d at 1101 (citing *Class Plaintiffs*, 955 F.2d at 1276).  As a result, "[a]pproval of

16  settlement is preferable to lengthy and expensive litigation with uncertain results."  *Johnson v.*

17  *Shaffer*, No. 2:12-cv-1059-KJM-AC, 2016 WL 3027744, at *4 (E.D. Cal. May 27, 2016) (citing

18  *Morales v. Stevco, Inc.*, No. 1:09-cv-00704-AWI-JLT, 2011 WL 5511767, at *10 (E.D. Cal. Nov.

19  10, 2011)).

20        Because of these challenges, Plaintiffs argue that further litigation would increase the

21  complexity, expense, and duration of the action.  (ECF No. 18 at 16.)  Plaintiffs note that even if

22  they demonstrate that Defendant had unlawful policies and practices, they would still have to

23  present evidence that Defendant's conduct was willful.  Plaintiffs would also have to present

24  evidence regarding the extent to which a given employee missed breaks and was not paid the

25  appropriate wage.  (*Id.*)  Such evidence would likely be individualized and increase the risk of

26  non-certification of the class.  (*Id.*)  As described by Plaintiffs and the Court in the preliminary

27  approval of the proposed settlement, there would be a "significant risk" that Plaintiffs would be

28

1    unable to obtain class certification and maintain a certified class throughout trial.  (*Id.*; ECF No.

2    31 at 26.)

3           The Court finds that consideration of this factor weighs in favor of granting final approval.

4                  3.     Amount Offered in Settlement

5           To evaluate the fairness of the settlement award, the court should "compare the terms of

6    the compromise with the likely rewards of litigation."  *Protective Comm. for Indep. Stockholders*

7    *of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424-25 (1968); *see also* Fed. R. Civ. P.

8    23(e)(2)(C)-(D).  "It is well-settled law that a cash settlement amounting to only a fraction of the

9    potential recovery does not *per se* render the settlement inadequate or unfair."  *In re Mego Fin.*

10   *Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000).  To determine whether a settlement "falls

11   within the range of possible approval," a court must focus on "substantive fairness and adequacy"

12   and "consider plaintiffs' expected recovery balanced against the value of the settlement offer."  *In*

13   *re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007).  In addition, the court

14   must consider whether "the proposal treats class members equitably relative to each other" and

15   whether "the relief provided for the class is adequate."  Fed. R. Civ. P. 23(e)(2)(C)-(D).

16          Here, the parties have agreed to a $995,000.00 gross settlement, allocated as follows: (1)

17   up to $248,750 for attorneys' fees and up to $15,000 for Plaintiffs' counsel's documented

18   litigation costs; (2) $10,000 incentive awards for each Plaintiff; (3) $10,000 in civil Private

19   Attorneys General Act, California Labor Code § 2698, *et seq.* ("PAGA") penalties, with $7,500

20   of the penalties payable to the California Labor and Workforce Development Agency

21   ("LWDA");[2] and (4) up to $15,000 for settlement administration costs.  (ECF No. 31 at 5.)

22   According to Plaintiffs' expert's analysis, Plaintiffs calculated that the maximum amount of

23   damages as $4,138,615 based on an average hourly rate of $25.16.  (ECF No. 34-1 at 18.)

24   Without including the estimated value of the PAGA claims, the gross settlement fund of

25   $995,000.00 is approximately a 24% recovery of Plaintiffs' maximum potential damages.  (*See*

26

27   [2] Pursuant to the PAGA, 75% of the civil PAGA penalties, or $7,500, will go to the LWDA, and
     25%, or $2,500, will be allocated to the net settlement fund. (ECF No. 30 at 30.) *See* Cal. Lab.
28   Code § 2699(i).

ECF No. 34-1 at 19); *see also Singh v. Roadrunner Intermodal Servs., LLC*, No. 1:15-cv-01497-DAD-BAM, 2018 WL 2412325, at *7 (E.D. Cal. May 29, 2018), *modified*, 2018 WL 4382202 (E.D. Cal. Sept. 13, 2018) (excluding the estimated value of the plaintiffs' PAGA claims when calculating the percentage of the estimated maximum damages accounted for by the proposed settlement amount).

However, Plaintiffs state that the valuation of their maximum potential damages assumes a 100% violation for the meal and rest claims, which experience shows is unlikely.  (ECF No. 34-1 at 18.)  Plaintiffs further state that there is more uncertainty about the meal period damages because the Department of Transportation only requires a meal period every eight hours, and not five as required by California law.  (*Id.*)  As a result, the settlement of $995,000.00 may constitute 40% or 50% of the maximum damages.  (*Id.* at 19.)

Approximately ninety percent of the net settlement fund will be allocated to the class action settlement, and the remaining ten percent will be allocated to the FLSA settlement.  (*See id.* at 20.)  The net settlement fund and FLSA net fund will be distributed to the members of the class and FLSA Collective on a *pro rata* and non-reversionary basis, with any uncashed funds to be donated to the California Unclaimed Property Fund.  (ECF No. 31 at 24.)  As stated by class counsel during the final fairness hearing, the average individual class members are expected to recover $1,528.81, with the highest gross settlement payment is estimated to be $8,134.44.  None of the net settlement fund will revert to Defendant because checks that are not cashed before their expiration will be cancelled, and those funds will be transmitted to the California State Controller's Unclaimed Property Fund.  (ECF No. 30 at 32.)

The proposed settlement amount is within the general range of percentage recoveries that California courts—including this one—have found to be reasonable.  *See, e.g.*, *Singh*, 2018 WL 2412325, at *7 (approving a settlement of about 12% of the estimated maximum damages); *Glass v. UBS Fin. Servs., Inc.*, No. 3:06-cv-04068-MMC, 2007 WL 221862, at *4 (N.D. Cal. Jan. 26, 2007) (approving a settlement of about 25-35% of the estimated maximum).  As noted above, the Court has neither received objections to the settlement nor have any Class or Collective Members sought to opt out of the settlement.  Finally, the Court acknowledges that a larger recovery would

1  likely not be possible because Defendant has "presented serious threats" to Plaintiffs' claims that

2  "could eliminate or substantially reduce any recovery to the class."  (ECF No. 18-1 at 18.)

3          Based on the information presented to the Court, the Court concludes that the amount

4  offered in settlement of this action provides adequate relief for the class.

5                          a.  *PAGA Penalties Amount Offered in Settlement*

6          As described above, the settlement also provides for $10,000 in civil PAGA penalties.

7  (ECF No. 31 at 26.)  Under PAGA, 75% of the civil penalties, or $7,500, will go to the LWDA,

8  and 25%, or $1,000.00, will be included in the net settlement amount.  (*Id.*); *see* Cal. Lab. Code §

9  2699(i).  The PAGA penalties are approximately $2,217,080.40 for wage statement and waiting

10 time violations.  (ECF No. 34 at 15.)

11         Although there is no binding authority setting forth the proper standard of review for

12 PAGA settlements, California district courts "have applied a Rule 23-like standard, asking

13 whether the settlement of the PAGA claims is 'fundamentally fair, adequate, and reasonable in

14 light of PAGA's policies and purposes.'"  *Haralson v. U.S. Aviation Servs. Corp.*, 383 F. Supp.

15 3d 959, 972 (N.D. Cal. 2019).  This standard is derived from the LWDA.  In commenting on a

16 proposed settlement including both class action and PAGA claims, the LWDA has offered the

17 following guidance:[3]

18         It is thus important that when a PAGA claim is settled, the relief provided for
       under the PAGA be genuine and meaningful, consistent with the underlying
19     purpose of the statute to benefit the public and, in the context of a class action,
       the court evaluate whether the settlement meets the standards of being
20     "fundamentally fair, reasonable, and adequate" with reference to the public
       policies underlying the PAGA.
21

22 *O'Connor v. Uber Techs., Inc.*, 201 F. Supp. 3d 1110, 1133 (N.D. Cal. 2016) (citing the LWDA's

23 guidance with approval).  Recognizing the distinct issues class actions present, the LWDA's

24 reasoning in *O'Connor* persuades this Court and therefore, it adopts this proposed standard in

25 evaluating the PAGA portion of the settlement.  *See, e.g.*, *Castro v. Paragon Indus., Inc.*, No.

26 _____

27 [3] The LWDA has also stated that it "is not aware of any existing case law establishing a specific
   benchmark for PAGA settlements, either on their own terms or in relation to the recovery on
28 other claims in the action."  *O'Connor v. Uber Techs., Inc.*, No. 3:13-cv-03826-EMC (N.D. Cal.
   Jul. 29, 2016).

1   1:19-cv-00755-DAD-SKO, 2020 WL 1984240, at *6 (E.D. Cal. Apr. 27, 2020); *Patel v. Nike*

2   *Retail Servs., Inc.*, No: 3:14-cv-04781-RS, 2019 WL 2029061, at *2 (N.D. Cal. May 8, 2019).

3        The proposed $10,000 penalty payment in this case represents 1% of the estimated

4   $995,000.00 gross settlement amount.  (*See* ECF No. 31 at 27.)  The amount proposed to settle

5   Plaintiffs' PAGA claims is consistent with other PAGA settlements approved by this Court.  *See,*

6   *e.g.*, *Syed v. M-I, LLC*, No: 1:12-cv-01718-DAD-MJS, 2017 WL 714367, at *13 (E.D. Cal. Feb.

7   22, 2017) (approving PAGA penalties representing 1.4% of the gross settlement fund); *Garcia v.*

8   *Gordon Trucking, Inc.*, No. 1:10-cv-0324-AWI-SKO, 2012 WL 5364575, at *7 (E.D. Cal. Oct.

9   31, 2012) (approving PAGA penalties representing 0.27% of the gross settlement fund); *Castro*,

10  2020 WL 1984240, at *15 (approving PAGA penalties representing 2% of the gross settlement

11  fund).  Moreover, in a declaration attached to Plaintiffs' motion for final approval, class counsel

12  declared that the proposed settlement was submitted to the LWDA in accordance with PAGA.

13  Cal. Lab. Code § 2699(l)(2) (requiring that the proposed settlement be submitted to LWDA at the

14  same time that it is submitted to the court); (*see* ECF No. 34-2 at 16-17.)  The LWDA has not

15  commented or indicated any objection to the settlement.  (ECF No. 34-2 at 3-4.)  Having

16  reviewed the parties' submission and the terms of the proposed settlement, the Court finds that

17  the settlement amount related to Plaintiffs' PAGA claims is fair, reasonable, and adequate in light

18  of PAGA's public policy goals.  Thus, the Court finds that the amount offered in settlement of the

19  PAGA claims here weighs in favor of final approval of the settlement.

20              4.      Extent of Discovery Completed and Stage of the Proceedings

21        "In the context of class action settlements, 'formal discovery is not a necessary ticket to

22  the bargaining table' where the parties have sufficient information to make an informed decision

23  about settlement."  *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998)

24  (quoting *In re Chicken Antitrust Litig.*, 669 F.2d 228, 241 (5th Cir. 1982)).  Approval of a class

25  action settlement "is proper as long as discovery allowed the parties to form a clear view of the

26  strengths and weaknesses of their cases."  *Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443,

27  454 (E.D. Cal. 2013).  A settlement is presumed fair if it "follow[s] sufficient discovery and

28

genuine arms-length negotiation." *Adoma v. Univ. of Phx., Inc.*, 913 F. Supp. 2d 964, 977 (E.D. Cal. 2012) (quoting *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004)).  The court must consider whether the process by which the parties arrived at their settlement is truly the product of arm's length bargaining and not collusion or fraud.  *Millan v. Cascade Water Servs., Inc.*, 310 F.R.D. 593, 613 (E.D. Cal. 2015).  These concerns are also reflected in Rule 23(e)(2)'s focus on procedural fairness—whether "the class representatives and class counsel have adequately represented the class" and whether "the proposal was negotiated at arm's length."  Fed. R. Civ. P. 23(e)(2)(A)-(B).

As detailed in the Court's order granting preliminary approval, the Court is satisfied that the settlement was the result of "extensive and hard-fought negotiations," involving "capable advocacy on all sides."  (ECF No. 18-1 at 15-16.)  The parties partook in private mediation before Gig Kyriacou, Esq., an experienced professional mediator, on November 1, 2016.  (ECF No. 18-1 at 14.)  The mediation took place after approximately six months of litigation, and prior to mediation, Defendant provided Plaintiffs with "payroll and employment data and other information regarding the Class Members, various internal documents, tax documentation, wage statements, earnings and other compensation and employment-related materials, including documents related to pay."  (*Id.*)  In advance of mediation, Plaintiffs' counsel analyzed the data Defendant provided with the assistance of a damages expert and submitted a mediation brief to Mr. Kyriacou.  (*Id.*)  According to the parties' settlement agreement, the parties were not able to reach an agreement to settle the action until after the conclusion of the mediation session, upon acceptance of a mediator's proposal.  (ECF No. 30 at 13.)

Accordingly, the Court concludes that consideration of this factor weighs in favor of granting final approval.

### 5. Experience and Views of Counsel

Class counsel Norman Blumenthal submitted a declaration describing his experience in class and representative action litigation.  (*See* ECF No. 34-2.)  Mr. Blumenthal graduated from Loyola University of Chicago and has been partner at Blumenthal Nordrehaug Bhowmik De Blouw LLP since 2018.  (*Id.* at 22.)  Mr. Blumenthal represents that the attorneys involved in this

1  matter at Blumenthal Nordrehaug Bhowmik De Blouw LLP have had extensive class action

2  experience in employment litigation and have represented thousands of people in actions

3  nationwide, including labor and employment litigation, wage and hour class actions,

4  representative PAGA actions, and complex litigation.  (*Id.* at 2.)  The attorneys at the firm also

5  have experience in large class cases involving labor code violations.  (*Id.*)  Class counsel has been

6  previously approved as experienced class counsel by state and federal courts throughout

7  California.  (*Id.*)

8      The Court finds that class counsel's experience and views weigh in favor of granting final

9  approval.

10              6.      Presence of a Governmental Participant

11      The settlement agreement contemplates payment of $7,500 of the settlement amount to the

12  California Labor and Workforce Development Agency ("LWDA") under PAGA.  (ECF No. 31 at

13  26.)  Because LWDA is a governmental participant in the settlement, this too weighs in favor of

14  approval of the settlement.  *See Adoma*, 913 F. Supp. 2d at 977 (factoring civil PAGA penalties in

15  favor of settlement approval); *Zamora v. Ryder Integrated Logistics, Inc.*, No. 3:13-cv-02679-

16  CAB-BGS, 2014 WL 9872803, at *10 (S.D. Cal. Dec. 23, 2014) (same).

17              7.      Reaction of the Class Members

18      "It is established that the absence of a large number of objections to a proposed class

19  action settlement raises a strong presumption that the terms of a proposed class settlement action

20  are favorable to the class members."  *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 529 (citing

21  cases).  The presumption that a settlement is fair, reasonable, and adequate is particularly strong

22  when there is an absence of a single objection to a proposed class action settlement.  *See id.*;

23  *Barcia v. Contain-A-Way, Inc.*, No. 3:07-cv-00938-IEG-JMA, 2009 WL 587844, at *4 (S.D. Cal.

24  Mar. 6, 2009).  Nevertheless, "[a] court may appropriately infer that a class action settlement is

25  fair, adequate, and reasonable when few class members object to it."  *Cruz v. Sky Chefs, Inc.*, No.

26  4:12-cv-02705-DMR, 2014 WL 7247065, at *5 (N.D. Cal. Dec. 19, 2014) (citing *Churchill Vill.*,

27  361 F.3d at 577).

28  ///

14

According to Plaintiffs, no Class Member has filed an objection to the settlement pending final approval.  (ECF No. 38 at 4.)  As a result, currently 100% of the Class Members will be participating in the settlement.  (*Id.*)  Moreover, no Class Members raised any objections to the settlement at the final fairness hearing.  Accordingly, consideration of this factor weighs in favor of granting final approval.

### 8.   Subtle Signs of Collusion

The Court now turns to the *Bluetooth* factors to examine whether any "more subtle signs" of collusion recognized by the Ninth Circuit are present here.  *See Bluetooth*, 654 F.3d at 947.

First, the Court does not find that class counsel is seeking a disproportionate distribution of the settlement.  With an average estimated Class Member recovery of $1,528.81 and a requested award of attorney's fees of $248,750, it does not appear that counsel seeks to receive a disproportionate distribution of the settlement.  *See, e.g.*, *Morales*, 2011 WL 5511767, at *12 ("The typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to 33 1/3% of the total settlement value, with 25% considered the benchmark.") (quoting *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000)); *Castro v. Paragon Indus., Inc.*, No. 1:19-cv-00755-DAD-SKO, 2021 WL 20242333, at *5, *12 (E.D. Cal. May 21, 2021) (granting final approval of a class and collective action settlement with an average individual class member recovery of $1,070.62 and an award of $1,031,250.00 in attorneys' fees).  Here, class counsel's request of $248,750 is approximately 25% of the total settlement value, placing it well within the range that the Ninth Circuit has found acceptable.

Second, although Defendant does not oppose counsel's Motion for Award of Attorneys' Fees and Costs, (ECF Nos. 33; 36 at 2), the proposed settlement does not include a "clear sailing" provision.  (*See* ECF No. 30 at 18-19.)  A "clear sailing" provision is one where the defendant agrees not to challenge the agreed-upon fees for class counsel.  *See Briseño*, 998 F.3d at 1026. The Ninth Circuit is concerned that such a provision "signals the potential that a defendant agreed to pay class counsel excessive fees in exchange for counsel accepting a lower amount for the class members."  *Id*. at 1027 (quoting *Bluetooth*, 654 F.3d at 949).  The Court further warned that the "very existence of a clear sailing provision increases the likelihood that class counsel will

15

1    have bargained away something of value to the class." *Id.*at 1027 (quoting *Weinberger v. Great*

2    *N. Nekoosa Corp.*, 925 F.2d 518, 525 (1st Cir. 1991)).  Lower courts are warned that "[w]hen

3    faced with a clear sailing provision, courts thus have a 'heightened duty to peer into the provision

4    and scrutinize closely the relationship between attorney's fees and benefit to the class, being

5    careful to avoid awarding "unreasonably high" fees simply because they are uncontested.'" *Id.*

6         Here, although there is no clear sailing provision in the First Amended Joint Stipulation of

7    Class Action Settlement, (ECF No. 30), Defendant filed a statement of non-opposition to

8    Plaintiffs' Motion for Award of Attorneys' Fees and Costs and Plaintiffs' Service Award, which

9    raises the same concerns the Ninth Circuit outlined in *Bluetooth*.  (ECF Nos. 33; 36 at 2.)  After

10   thoroughly scrutinizing the relationship between the attorneys' fees and benefit to the class, the

11   Court is satisfied that the fees that Plaintiffs' counsel requested are not excessive and do not

12   unjustly enrich counsel at the expense of Class Members.  Specifically, the Court notes that there

13   were provisions in the First Amended Joint Stipulation of Class Action Settlement that prohibited

14   Plaintiffs' counsel to cancel the settlement agreement should this Court award less than the

15   attorneys' fees amount set forth in the settlement agreement.  (ECF No. 30 at 18-19.)  The parties

16   did not arrange for an unawarded amount of fees to revert to Defendant.  Rather, any unclaimed

17   funds from the settlement checks shall be paid to the California Controller's Unclaimed Property

18   Fund in the name of the participating Class Member.  (ECF No. 34-2 at 65.)

19        In light of all of the above, the Court is satisfied that the more subtle signs of collusion

20   noted in *Bluetooth* are not present here and finds that the settlement is fair, reasonable, and

21   adequate.  *See* Fed. R. Civ. P. 23(e).  Therefore, the Court will grant Plaintiffs' motion for final

22   approval of the parties' class action settlement.

23   **IV.     FINAL APPROVAL OF FLSA COLLECTIVE SETTLEMENT**

24        The third amended complaint in this action also contains a claim brought under the Fair

25   Labor Standards Act ("FLSA").  (*See* ECF No. 1-5 at 39.)  Settlement of claims under the FLSA

26   also require court approval.  *See Jones v. Agilysys, Inc.*, No. 4:12-cv-03516-SBA, 2014 WL

27   108420, at *2 (N.D. Cal. Jan. 10, 2014); *Barrentine v. Ark.-Best Freight Sys., Inc.*, 450 U.S. 728,

28   740 (1981); *Yue Zhou v. Wang's Rest.*, No. 5:05-cv-0279-PVT, 2007 WL 2298046, at *1, n.1

1   (N.D. Cal. Aug. 8, 2007).  "The FLSA establishes federal minimum-wage, maximum-hour, and

2   overtime guarantees that cannot be modified by contract."  *Genesis Healthcare Corp. v. Symczyk*,

3   569 U.S. 66, 69 (2013).

4         The Ninth Circuit provides guidance for district courts to evaluate whether a FLSA

5   settlement should be approved.  *See Wonderly v. Youngblood*, No 1:16-cv-01621-BAK-SKO,

6   2022 WL 378262, at *3 (E.D. Cal. Feb. 8, 2022) (citing *Dunn v. Teachers Ins. & Annuity Ass'n of*

7   *Am.*, No. 4:13-cv-05456-HSG, 2016 WL 153266, at 3* (N.D. Cal. Jan. 13, 2016)).  In the Ninth

8   Circuit, district courts look to whether the settlement is a fair and reasonable resolution of a *bona*

9   *fide* dispute.  *Dunn*, 2016 WL 153266, at *3; *see also Lynn's Food Stores, Inc. v. United States*,

10  679 F.2d 1350, 1352-53 (11th Cir. 1982); *Selk v. Pioneers Mem'l Healthcare Dist.*, 159 F. Supp.

11  3d 1164, 1172 (S.D. Cal. 2016); *Yue Zhou*, 2007 WL 2298046, at *1.  "A *bona fide* dispute exists

12  when there are legitimate questions about the existence and extent of Defendant's FLSA

13  liability."  *Selk*, 159 F. Supp. 3d at 1172 (internal quotation marks and citation omitted).  A court

14  will not approve a settlement of an action in which there is certainty that the FLSA entitles

15  plaintiff to the compensation they seek, because to do so would shield employers from the full

16  cost of complying with the statute.  *Id.*

17        Once a *bona fide* dispute is established, courts often apply the Rule 23 factors for

18  assessing proposed class action settlements when evaluating the fairness of a FLSA settlement,

19  while recognizing that some of those factors do not apply because of the inherent differences

20  between class actions and FLSA actions.  *See Khanna v. Inter-Con Sec. Sys., Inc.*, No. 2:09-cv-

21  2214-KJM-EFB, 2013 WL 1193485, at *2 (E.D. Cal. Mar. 22, 2013).  Having found this

22  settlement to be fair and reasonable under Rule 23, the Court now looks only to whether there is a

23  *bona fide* dispute regarding the existence and extent of Defendant's FLSA liability.

24        Plaintiffs have not explicitly advanced arguments regarding whether there is a *bona fide*

25  dispute here, in either of their motions for preliminary or final approval.  Nonetheless, as the

26  Court noted in its order granting preliminary approval of the settlement, such a dispute is apparent

27  in this case.  (ECF No. 31 at 22.)  Plaintiffs assert that Defendant violated the FLSA by failing to

28  properly pay straight and overtime wages.  (ECF No. 30 at 34; *see also* ECF No. 1-4 at 100-102.)

However, Plaintiffs' counsel concede that "there could be significant problems of proof regarding the extent to which the members of the Class missed breaks relating to their employ with Defendant." (ECF No. 18-1 at 21.)  For example, Defendant contends that its truck drivers were able to take meal and rest breaks because they controlled their own schedule.  (*Id.*)  Defendant "vigorously denies and continues to deny all of the material allegations asserted in the Action, and denies that it has violated any wage and hour law or wage payment or any other law or obligation of any kind to Plaintiffs or any of the Class Members." (ECF No. 30 at 12.)  Indeed, according to the proposed Class Notice in this case, Defendant "denies that it did anything wrong and . . . entered into the Settlement solely for the purpose of resolving the Action." (*Id.* at 44.)

Based upon the information provided, the Court now concludes that there was a *bona fide* dispute as to Defendant's FLSA liability and thus will approve the parties' FLSA settlement.

## V.   ATTORNEYS' FEES, COSTS, AND INCENTIVE PAYMENTS

As noted above, Plaintiffs have also submitted a motion seeking their attorneys' fees, class counsel's litigation expenses, settlement administrator costs to ILYM, and an incentive award for Plaintiffs.

### A.   Attorneys' Fees

This Court has an "independent obligation to ensure that the award [of attorneys' fees], like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *Bluetooth*, 654 F.3d at 941.  This is because, when fees are to be paid from a common fund, the relationship between the class members and class counsel "turns adversarial." *In re Mercury Interactive Corp. Secs. Litig.*, 618 F.3d 988, 994 (9th Cir. 2010); *In re Wash. Pub. Power Supply Sys. Secs. Litig.*, 19 F.3d 1291, 1302 (9th Cir. 1994).  As such, the district court assumes a fiduciary role for the class members in evaluating a request for an award of attorneys' fees from the common fund. *In re Mercury*, 618 F.3d at 994; *see also Rodriguez v. Disner*, 688 F.3d 645, 655 (9th Cir. 2012); *West Publ'g Corp.*, 563 F.3d at 968.

The Ninth Circuit has approved two methods for determining attorneys' fees in such cases where the attorneys' fee award is taken from the common fund set aside for the entire settlement:

18

the "percentage of the fund" method and the "lodestar" method.  *Vizcaino v. Microsoft Corp.*, 290

F.3d 1043, 1047 (9th Cir. 2002) (citation omitted).  The district court retains discretion in

common fund cases to choose either method.  *Id.*; *Vu v. Fashion Inst. of Design & Merch.*, No.

2:14-cv-08822-SJO-EX, 2016 WL 6211308, at *5 (C.D. Cal. Mar. 22, 2016).  Under either

approach, "[r]easonableness is the goal, and mechanical or formulaic application of method,

where it yields an unreasonable result, can be an abuse of discretion."  *Fischel v. Equitable Life

Assurance Soc'y of U.S.*, 307 F.3d 997, 1007 (9th Cir. 2002).  As noted above, the Ninth Circuit

has generally set a 25% benchmark for the award of attorneys' fees in common fund cases.  *Id.* at

1047-48; *see also Bluetooth*, 654 F.3d at 942 ("[C]ourts typically calculate 25% of the fund as the

'benchmark' for a reasonable fee award, providing adequate explanation in the record of any

'special circumstances' justifying a departure.").

Reasons to vary from the benchmark award may be found when counsel achieves

exceptional results for the class, undertakes "extremely risky" litigation, generates benefits for the

class beyond simply the cash settlement fund, or handles the case on a contingency basis.

*Vizcaino*, 290 F.3d at 1048-50; *see also In re Online DVD-Rental*, 779 F.3d at 954-55.

Ultimately, however, "[s]election of the benchmark or any other rate must be supported by

findings that take into account all of the circumstances of the case."  *Vizcaino*, 290 F.3d at 1048.

The Ninth Circuit has approved the use of the lodestar cross-check as a way of determining the

reasonableness of a particular percentage recovery of a common fund.  *Id.* at 1050 ("Where such

investment is minimal, as in the case of an early settlement, the lodestar calculation may convince

a court that a lower percentage is reasonable. Similarly, the lodestar calculation can be helpful in

suggesting a higher percentage when litigation has been protracted."); *see also In re Online DVD-

Rental*, 779 F.3d at 955.

Here, the parties' settlement provides that class counsel will seek an award of 25% of the

gross settlement fund, equivalent to $248,750.  (ECF No. 33-1 at 12.)  The Court approved

Plaintiffs' request for attorneys' fees on a preliminary basis, finding that the requested fee was

reasonable and consistent with the benchmark rate in the Ninth Circuit.  (ECF No. 31 at 29-30);

*see In re Bluetooth*, 654 F.3d at 947.  Class counsel contend that a fee award of 25% of the gross settlement fund is reasonable here for several reasons.

First, class counsel assert that the results achieved, the lessened risk of litigation, and their work and skill support the reasonableness of the requested attorneys' fees.  (*See* ECF No. 33-1 at 8-12.)  Early recovery for the class, through settlement, avoids the risk of the class receiving nothing at all.  (*Id.* at 15.)  Moreover, class counsel state that, "if the Action was not settled, Plaintiffs would be unable to obtain class certification and maintain a certified class through trial, and thereby not recover on behalf of any employees other than themselves."  (*Id.* at 16.)  Class counsel further claim that that their work and skill resulted in the early settlement.  (*Id.* at 17.)  The parties achieved early settlement because, recognizing the risks outlined above, class counsel convinced Defendant that Plaintiffs could possibly prevail on the issues regarding liability, maintaining class certification through trial, and taking the case to trial.  (*Id.* at 17.)  Because the instant action was promptly settled and avoided further litigation, this weighs in favor of the requested award.

Second, class counsel posits that working on a contingent fee basis and undertaking the financial burdens of prosecuting the action support that the reasonableness of the requested attorneys' fees.  (*See* ECF No. 33-1 at 18-19.)  Class counsel assert that, "[an] attorney working on a contingent basis can only log hours while working without pay towards a result that will hopefully entitle him to a market-place contingent fee[,] taking into account the risk and other factors of the undertaking."  (*Id.* at 18 (citing *Powers v. Eichen*, 229 F.3d 1249, 1257 (9th Cir. 2000).)  It should be noted that the Ninth Circuit has recognized that counsel retained on a contingency fee basis is entitled to a premium above their hourly rate to compensate for both the risks and the delay in payment.  *See Stanger v. China Elec. Motor, Inc.*, 812 F.3d 734 (9th Cir. 2016); *Stetson v. Grissom*, 821 F.3d 1157, 1166 (9th Cir. 2016).

Furthermore, the fee award requested in this case is reasonable when compared to the prevailing higher fees that have been awarded in other similar cases, including previous awards obtained from this class counsel.  (*See* ECF No. 33-1 at 21.)  Also persuasive to the Court is the absence of any objection to the settlement or requests for exclusions despite specific notice to the

20

1   class regarding the amount of attorneys' fees counsel sought.  (*Id.* at 22-23.)  As such, the Court

2   finds the amount reasonable under the percentage of the fund method.

3        The Court next turns to the lodestar method to cross-check the reasonableness of the

4   requested attorneys' fee award.  Where a lodestar is merely being used as a cross-check, the court

5   "may use a 'rough calculation of the lodestar.'"  *Bond v. Ferguson Enters., Inc.*, No. 1:09-cv-

6   1662-OWW-MJS, 2011 WL 2648879, at *12 (E.D. Cal. June 30, 2011) (quoting *Fernandez v.*

7   *Victoria Secret Stores, LLC*, No. 2:06-cv-04149-MMM-SHX, 2008 WL 8150856 (C.D. Cal. July

8   21, 2008)).  The Court is aware that in certain situations, a multiplier added to the lodestar

9   amount may be appropriate.  "Multipliers in the 3-4 range are common in lodestar awards for

10  length and complex class action litigation."  *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294,

11  298 (N.D. Cal. 1995) (citing *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 549 (S.D. Fla.

12  1988)); *see also* 5 Newberg on Class Actions § 15:87 (stating courts typically approve percentage

13  awards based on lodestar cross-checks of 1.9 to 5.1 or even higher, and "the multiplier of 1.9 is

14  comparable to multipliers used by the courts"); *In re Prudential Ins. Co. Am. Sales Practice Litig.*

15  *Agent Actions*, 148 F.3d 283, 341 (3d Cir. 1988) ("[M]ultiples ranging from one to four are

16  frequently awarded in common fund cases when the lodestar method is applied.").

17       According to class counsel, the total lodestar amount is $273,091.50, which reflects 402

18  hours expended by class counsel.  (ECF No. 33-1 at 23.)  It is worth noting that class counsel's

19  lodestar exceeds the requested 25% of the gross settlement amount by $24,341.  "[T]he requested

20  fee award represents an amount that is equivalent to the current lodestar without a multiplier, and

21  there remains significant work still to be performed, such that the award will ultimately represent

22  a negative multiplier."  (ECF No. 33-2 at 13.)  In support of this lodestar calculation, class

23  counsel submitted an accounting of the hours billed by various firm employees, tasks completed

24  by those employees, and applicable billing rates.  (*See id.* at 100-122.)  Class counsel's employees

25  who have worked on this matter include partner attorneys with hourly rates from $695 to $795,

26  associate attorneys with hourly rates from $475 to $550, and paralegals with hourly rates from

27  $175 to $275.  (*Id.* at 13.)  The Court finds that these rates are fair and reasonable in this case.

28  *See Mathien v. Pier 1 Imports (U.S.), Inc.*, No: 1:16-cv-00087-DAD-SAB, 2018 WL 1993727, at

21

*11 (E.D. Cal. Apr. 27, 2018) (accepting hourly rates of between $475 and $575 for associates, and $675 and $750 for senior counsel and partners); *Emmons v. Quest Diagnostics Clinical Labs., Inc.*, 1:13-cv-00474-DAD-BAM, at *8 (E.D. Cal. Feb. 27, 2017) (accepting hourly rates between $330 and $550 for associates, and $500 and $720 for partners); *Zest IP Holdings, LLC v. Implant Direct Mfg., LLC*, No. 10-cv-0541-GPC-WVG, 2014 WL 67494 (S.D. Cal. Jan. 8, 2014) (accepting an hourly rate of $775 for partners and $543 for associates in the Southern District of California).

For the reasons set forth above, the Court concludes that the lodestar cross-check supports the requested award of $248,750 in attorneys' fees, an amount equal to one-fourth of the gross settlement fund in this case.

## B.     Costs and Expenses of Class and Collective Counsel

Additionally, class counsel seeks to recover the costs and expenses advanced while prosecuting this litigation.  Such awards "should be limited to typical out-of-pocket expenses that are charged to a fee-paying client and should be reasonable and necessary."  *In re Immune Response Secs. Litig*, 497 F. Supp. 2d 1166, 1177 (S.D. Cal. 2007).  These can include reimbursements for: "(1) meals, hotels, and transportation; (2) photocopies; (3) postage, telephone, and fax; (4) filing fees; (5) messenger and overnight delivery; (6) online legal research; (7) class action notices; (8) experts, consultants, and investigators; and (9) mediation fees."  *Id.*

Here, class counsel requests reimbursement in the amount $14,957.05.  (ECF No. 33-2 at 15.)  The Court has reviewed class counsel's declaration and finds all the charges incurred to be reasonable.  Accordingly, the Court will approve the reimbursement of costs and expenses in the amount requested.

## C.     Incentive Award

Courts frequently approve "service" or "incentive" awards in class action cases.  *West Publ'g Corp.*, 563 F.3d at 958-59.  Incentive awards recognize the effort of class representatives "for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general."  *Id.* at 958.  The district court evaluates each award individually, using "relevant factors

includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . the amount of time and effort the plaintiff expended in pursuing the litigation . . . and reasonabl[e] fear[s of] workplace retaliation." *Staton*, 327 F.3d at 977 (quoting *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998)).

Courts typically find an award of $5,000 to be presumptively reasonable.  *See, e.g.*, *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 457, 463 (9th Cir. 2000) (endorsing $5,000 service awards to named representatives); *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 246 (N.D. Cal. 2015) (collecting cases); *In re Toys R. Us-Del., Inc. FACTA Litig.*, 295 F.R.D. 438, 470-72 (C.D. Cal. 2014) (awarding plaintiffs $5,000 each "consistent with the amount courts typically award as incentive payments").  Higher amounts can be appropriate, such as in employment actions, where a plaintiff risks retaliation or blacklisting as a result of suing her employer.  *See, e.g.*, *Buccellato v. AT&T Operations, Inc.*, No. 5:10-cv-00463-LHK, 2011 WL 4526673, at *4 (N.D. Cal. June 30, 2011).

Here, Plaintiffs Mondrian and Jones each seek an incentive award of $10,000 for their services in this action. (ECF No. 33-1 at 25.)  Plaintiffs contend that this amount is fair and reasonable compensation because they actively participated in the case's prosecution and estimate that they each devoted between 40 and 50 hours on this litigation.  (ECF Nos. 33-1 at 25-27, 34-2 at 105, 114.)  Plaintiffs effectively communicated with class counsel, provided documents and information to class counsel, and participated extensively in the investigation of the action.  (*Id.* at 25-27.)  Moreover, Plaintiffs assumed the risk, among other things, that they might possibly be liable for costs incurred in connection with this case, which have exceeded the requested awards.  (*Id.*)  Plaintiffs also indicate that they risked being "blacklisted" by other future employers for having sued Defendant in a class action.  (*Id.*)

Although the incentive award sought—$20,000 in total or about 2% of the gross settlement amount is on the higher end, particularly for the relatively low number of hours expended by Plaintiffs on this case, it is not unreasonable or beyond the norm for this district, particularly given the average individual settlement payment of $1,528.81 in this case.  *See, e.g.*, *Castro*, 2021 WL 2042333, at *13 (granting $10,000 award for 70 hours of work over three years,

1    reflecting 0.025% of the gross settlement amount); *Acosta v. Evergreen Moneysource Mortg. Co.*,

2    No. 2:17-cv-00466-KJM-DB, 2019 WL 6051117, at *18 (E.D. Cal. Nov. 15, 2019) (granting

3    $10,000 award for 40 hours of work, reflecting 2.85% of the gross settlement amount); *Aguilar v.*

4    *Wawona Frozen Foods*, No. 1:15-cv-00093-DAD-EPG, 2017 WL 2214936, at *8 (E.D. Cal. May

5    19, 2017) (approving an incentive award of $7,500 to each class representative where average

6    class recovery was approximately $500).  Considering Plaintiffs supporting declarations detailing

7    their assistance with this case, the Court finds that the requested incentive payment of $10,000 for

8    each Plaintiff is fair and reasonable.  Accordingly, the Court will award the incentive payment as

9    requested.

10    **D.    Settlement Administrator Costs**

11    The Court previously approved the appointment of ILYM Group as the settlement

12    administrator for this action.  (ECF No. 31 at 36.)  The estimated cost of administering the

13    settlement is less than $15,000, which will be deducted from the qualified settlement fund.  (ECF

14    No. 30 at 19.)  According to the declaration of Madely Nava, the settlement administrator, the

15    total cost for administration of this settlement, including fees incurred and future costs for

16    completion, is $11,990.00.  (ECF No. 38 at 5.)  This amount is consistent with, and in some cases

17    lower than, other settlements submitted to this Court.  *See, e.g.*, *Castro*, 2020 WL 1984240, at

18    *19 (administration costs of $15,000 for a $3.75 million settlement); *Gonzalez v. CoreCivic of*

19    *Tennessee, LLC*, No. 1:16-cv-01891-DAD-JLT, 2020 WL 1475991, at *14 (E.D. Cal. Mar. 26,

20    2020) (administration costs of $15,000 for a $3.2 million settlement); *Dakota Med., Inc. v.*

21    *RehabCare Grp., Inc.*, No. 1:14-cv-02081-DAD-BAM, 2017 WL 1398816, at *5 (E.D. Cal. Apr.

22    19, 2017) (administration costs of $94,000 for a $25 million settlement); *Aguilar v. Wawona*

23    *Frozen Foods*, No. 1:15-cv-00093-DAD-EPG, 2017 WL 117789, at *7 (E.D. Cal. Jan. 11, 2017)

24    (administration costs of $45,000 for a $4.5 million settlement).  The Court finds these

25    administration costs reasonable and will direct payment in the requested amount.

26    ///

27    ///

28    ///

**VI.   Conclusion**

Accordingly,

1. The proposed class identified in the settlement agreement, (ECF No. 30), is certified for settlement purposes;

2. Plaintiffs' motion for final approval of class and collective action settlement, (ECF No. 34), is GRANTED, and the Court approves the settlement as fair, reasonable, and adequate;

3. Augustus Mondrian and Rhonda Jones are confirmed as class representatives; Plaintiffs' counsel, Blumenthal Nordrehaug Bhowmik de Blouw LLP, is confirmed as class counsel; and ILYM Group is confirmed as the settlement administrator;

4. Plaintiffs' motion for an award of attorneys' fees and costs, incentive awards, and settlement administrator costs (ECF No. 33.), is GRANTED;

5. The Court awards the following sums:

   a. Class counsel shall receive $248,750.00 in attorneys' fees and $14,957.05 in expenses.  Class counsel shall not seek or obtain any other compensation or reimbursement from Defendant, Plaintiffs, or Class Members;

   b. Plaintiffs Mondrian and Jones shall each receive $10,000 as an incentive payment;

   c. ILYM Group shall receive $11,990.00 in settlement administration costs; and

   d. The parties shall direct payment of 75 percent of the settlement allocated to the PAGA payment, or $7,500, to the California Labor and Workforce Development Agency as required by California law, and the remainder of the PAGA payment, or $2,500, shall be included in the net settlement fund;

6. The parties are directed to effectuate all terms of the settlement agreement, (ECF No. 34-2 at 38-74), and any deadlines or procedures for distribution set forth therein;

///
///
///
///

7. This action is dismissed with prejudice, with the Court specifically retaining jurisdiction over this action for the purpose of enforcing the parties' settlement agreement; and

8. The Clerk of the Court is directed to close this case.


IT IS SO ORDERED.

Dated:   October 6, 2022

_____
UNITED STATES DISTRICT JUDGE